IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
KANSAS CITY, KANSAS COURTHOUSE

| | |
|---|---|
| THOMAS R. WINSTON, individually and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston, Plaintiff, <br><br> vs. <br><br> VAN OSDOL, P.C., **serve resident agent**: VOMER Agent Services Co. 1000 Walnut Street, Suite 1500 Kansas City, Missouri, 64106, and ANNE LINTON POND HENDRICKSON, **serve at**: 5338 Lowell Street, Mission KS 66202 Defendants. | Case No. _____ <br><br> Division _____ <br><br> **Plaintiff requests trial by jury** |

COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Thomas R. Winston, individually, and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston, by attorney and for his complaint states and alleges as follows:

Parties

1.     Thomas R. Winston (hereinafter "Thomas") is an individual residing in Johnson County, Kansas and during the times relevant herein, the trustee of five (5) irrevocable non-testamentary trusts (hereinafter "trusts", copies of which are attached hereto marked exhibit 1 and incorporated herein by this reference as if fully set forth) created by Bernard H. Winston (hereinafter "Bernard") of which Thomas was the trustee of one or more of the trusts since November 9, 1989, and which Thomas administered in his capacity as trustee (hereinafter referred to as "trustee") from his home in Johnson County, Kansas, in which the property that is the subject of the trusts and this action were situated from February 5, 1996 through and including March 3, 2021.

2.     Van Osdol, P.C. (hereinafter "Van Osdol")  is a professional corporation organized and existing by virtue of the statutes of the state of Missouri, with its registered office and place of business located at 1000 Walnut Street, Suite # 1500, Kansas City, Jackson County, Missouri 64106.

3.     Anne Linton Pond Hendrickson (hereinafter "Hendrickson") is an individual residing at 5338 Lowell Street, Mission, Johnson County, Kansas 66202 and at all times relevant herein a member of the board of directors of Van Osdol.

<u>Jurisdiction</u>

4.     This court has subject matter jurisdiction pursuant to 28 U.S. Code §§ 1331, 1343 & 1367.

<u>Venue</u>

5.     Venue is proper in this court, 28 U.S. Code § 1391(b).

<u>Facts</u>

6.     The trusts are dated November 9, 1989, December 10, 1990, November 19, 1991, November 23, 1992 and January 6, 1993.

7.     Bernard was the settlor of the trusts, and, the father of Thomas.

8.     The beneficiaries of the trusts are Michelle (Winston) Tutmaher (hereinafter "Michelle") and David Winston (hereinafter "David") who are brother and sister, the children of Thomas and grandchildren of Bernard.

9.     According to the terms of the trusts, the trusts ended when Michelle and David reached the age of thirty (30) years, on ██████████████.

10.    The terms of the trust do not specify reimbursement of expenses or compensation for the trustee.

11.     Over several months, attorneys on behalf of trustee requested, through attorneys for Michelle and David,  a trustee fee and reimbursement of expenses incurred by the trustee.

12.     On February 20, 2020, Hendrickson, as the attorney for Michelle and David, sent an email (a copy of which is attached hereto marked exhibit 2 and incorporated herein by this reference as if fully set forth) to Roger Templin, one of the attorneys for trustee, that stated, "The Trusts are silent in regards to fees and David and Michelle will not agree to pay any fees short of being ordered to do so by the Court, …".

14.     Pursuant to § 456.8-817 RSMo and K.S.A. 58a-817 (copies of which are attached hereto marked exhibit 3 and incorporated herein by this reference as if fully set forth), on March 15, 2020 trustee sent a proposal for final distribution (hereinafter "proposal" a copy of which is attached as exhibit 4 and incorporated herein by this reference as if fully set forth) to Hendrickson, the attorney for Michelle and David.

15.     On March 16, 2020 Hendrickson, attorney for Michelle and David, sent 2 objections to the proposal, 1 on behalf of David and 1 on behalf of Michelle (copies of which are attached hereto marked exhibit 5 and incorporated herein by this reference as if fully set forth).

16.     § 456.7-708(a) and K.S.A. 58a-708(a) (copies of which are attached hereto marked exhibit 6 and incorporated herein by this reference as if fully set forth) state, "If the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances."

17.     § 456.7-709 K.S.A. 58a-709 (copies of which are attached hereto marked exhibit 7 and incorporated herein by this reference as if fully set forth)  state,

(a)     A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for:

(1)     Expenses that were properly incurred in the administration of the trust; and

(2)     to the extent necessary to prevent unjust enrichment of the trust, expenses that were not properly incurred in the administration of the trust.

(b)     An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest.

18.     Faced with actual injury and being aggrieved thereby, in the nature of the loss of expenses of administration of the trusts and deprivation of a reasonable fee for his services as the trustee of the trusts, trustee filed a Petition (a copy of which is attached hereto marked exhibit 8 and incorporated herein by this reference as if fully set forth) on March 25, 2020, for declaratory judgment, in the district court of Johnson County, Kansas (hereinafter "district court"), case number 20CV01537 (hereinafter "Kansas trust case"), requesting the court to determine:

a.      if trustee was entitled to be reimbursed for his expenses and if so how much;

b.      if trustee was entitled to a fee, and if so how much; and

c.      if trustee had a lien on the trusts corpus for his fee and/or expenses.

19.     Thomas filed the Kansas trust case in his capacity as trustee; Thomas was not personally a party to the Kansas trust case.

20.     On April 29, 2020, Hendrickson and Van Osdol filed, pursuant to K.S.A. 60-207(a), in the Kansas trust case, an Answer and Counterpetition (hereinafter "Answer" a copy of which is attached hereto marked exhibit 9 and incorporated herein by this reference as if fully set forth) on behalf of their clients David and Michelle.

4

21.     March 16, 1998 Thomas's then spouse, and mother of Michelle and David, filed for divorce from Thomas (hereinafter "divorce case").

22.     On or about August 23, 1998 the Kansas Department of Social and Rehabilitative Services, "SRS" (now Kansas Department for Children and Families), an administrative agency of the executive branch of the Kansas government created by K.S.A. 75-5301, received a confidential report that Thomas abused David.

23.     Pursuant to the then Kansas administrative regulations adopted by SRS, K.A.R. 30-46-10(d)&(e), SRS found the report that David was abused to be substantiated and also substantiated Thomas as the person that abused David.

24.     The purpose of SRS validating the allegation against Thomas is so his name could be placed in the Kansas Abuse and Neglect Central Registry (hereinafter "Registry"), K.A.R. 30-46-16. K.S.A. § 65-516 & 38-2226.

25.     The Registry, is a confidential listing of individuals who are not permitted to be employed, reside, or volunteer in Kansas child care facilities. K.S.A. § 65-516.

26.     On January 14, 1999 SRS received a confidential report Thomas abused Michelle.

27.     On April 2, 1999, SRS notified Thomas it substantiated and validated him for the abuse of Michelle.

28.     On May 18, 1999, SRS withdrew its finding of substantiation and/or validation of the abuse of David by Thomas.

29.     May 20, 1999, Thomas, pursuant to K.A.R. 30-7-67 & 30-7-68, filed a request for an evidentiary hearing known as a "fair hearing", before the administrative hearings section of SRS, on the allegations of abuse relating to Michelle.

30.     On or about August 3, 1999, SRS sent a new notice of substantiation and validation to Thomas regarding the alleged abuse of David, and, an amended notice of substantiation and validation regarding the alleged abuse of Michelle.

31.     The substantiation and/or validation of Thomas for abuse of David and/or Michelle meant that SRS determined there was enough evidence, a reasonable person could conclude it was "more likely than not" David and/or Michelle were abused, and, Thomas was responsible for the abuse of David and Michelle. K.A.R. 30-46-10(e).

32.     The divorce case was finalized in August, 1999.

33.     An administrative hearing was conducted, pursuant to Kansas administrative regulations, on SRS's substantiation and validation of abuse of Michelle and David on February 15, 16, and 18, 2000.

34.     March 8, 2000, the presiding officer of the administrative hearings section of SRS affirmed SRS's substantiation and validation of Thomas regarding the alleged abuse of David and reversed the substantiation and validation of Thomas for the alleged abuse of Michelle.

35.     Thomas appealed the substantiation and validation regarding the alleged abuse of David, and SRS cross-appealed the presiding officer's reversal regarding Michelle, to the State Appeals Committee.

36.     In a final order issued September 21, 2000, the State Appeals Committee restated the findings of fact as stated in the initial order and adopted the presiding officer's conclusions of law.

37.     Thomas filed a petition for review in the district court on October 12, 2000.

38.     The district court upheld the findings of the presiding officer and the State Appeals Committee.

6

39.     Thomas timely filed a notice of appeal to the Kansas court of appeals, but, the Kansas supreme court (hereinafter "supreme court") transferred the case to itself on its own motion.

40.     The supreme court affirmed the decision of the presiding officer and the State Appeals Committee, *Winston v. Kansas Dept. of SRS, 49 P.3d 1274, 274 Kan. 396 (2002)*.

41.     SRS, an administrative agency of the executive branch of the Kansas government, created by K.S.A. 75-5301, which required the legislative branch of the Kansas government to pass legislation and the executive branch (i.e., the Governor) of the Kansas government to sign the legislation into law, which are actions not only traditionally but in fact are the exclusive prerogative of the state of Kansas.

42.     As an executive administrative agency, SRS, issued regulations, which had the force and effect of law, that governed the investigation, substantiation and the administrative hearing process and appeal, all of which was confidential and not open to the public in any manner, which are actions not only traditionally but in fact are the exclusive prerogative of the state of Kansas.

43.     The judicial branch of the Kansas government, beginning with the district court that heard the public proceeding, wherein it reviewed the administrative process conducted by SRS, and, then the supreme court heard the appeal and rendered an opinion of the proceedings which was published to the public (hereinafter collectively referred to as the "Kansas abuse case"), which are actions not only traditionally but in fact are the exclusive prerogative of the state of Kansas.

44.     A motion to seal the divorce case file, which contained the same allegations of abuse, was denied by the district court, which are actions not only traditionally, but in fact are the exclusive prerogative of the district court and the judicial branch of the state of Kansas.

7

45.     SRS's records were filed with the district court in the divorce case, and pursuant to motion, notice and hearing, they were unsealed and made a public record also, which is not only traditionally, but in fact are, the exclusive prerogative of the judicial branch of the state of Kansas.

46.     Only the state of Kansas, whether the executive branch, legislative branch or judicial branch have a constitutional, statutory, administrative or other right to receive a report of abuse or neglect of a child, to investigate the report, make a determination whether the report is substantiated and/or validated and whether a person is substantiated or validated, place the name of the substantiated person on the confidential Registry available to certain employers such as child care facilities, who are prohibited from employing such persons, and publishing the information deemed "confidential" during an abuse and neglect investigation and while on the Registry, but then making the same information public if either side contests the result of the administrative process by filing an action and/or appeal in the state courts, making each of the foregoing activities a public function because they are the exclusive prerogative of the state of Kansas.

47.     When the judicial branch of Kansas made the Kansas abuse case public, which is the exclusive  prerogative of the state of Kansas, they did not limit access to the information by sealing the records and/or entering an Order prohibiting the disclosure, publication or making information public by the participants in the case(s) in the courts or making the disclosure, publication or making information public a crime, the judicial branch of government of the state of Kansas placed its imprimatur on public disclosure, usage, dissemination and republication of the information contained in the Kansas abuse case.

**Count I - 42 U.S.C. § 1983 & 1988**

48.     Plaintiff incorporates herein by this reference as if fully set forth paragraphs 1 - 47 above.

49.     Defendants Hendrickson and Van Osdol republished, in the Answer (Exhibit 9), they filed in the Kansas trust case, under color of state law, pursuant to K.S.A. 60-207 & 60-208, the information from the divorce case and the Kansas abuse case.

50.     Thomas had a constitutional right of privacy involving familial privacy and autonomy which encompasses prohibiting disclosure of personal matters.

51.     In addition to the disclosure of personal matters about Thomas, his familial relationships, and autonomy, that were directly aimed at the parent-child relationship between Thomas and his children, Thomas lost a liberty interest established under the 1st Amendment applied to the states through the 14th Amendment of the United States Constitution, when the public information contained in the Kansas abuse case imposed on him a stigma and/or other disabilities that altered and extinguished his freedom to take advantage of employment opportunities, and placed tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol.

52.     Thomas lost employment opportunities from being placed on the Registry and having the information contained in the Kansas abuse case made public costing Thomas property interests, protected by the 5th and 14th Amendments to the U.S. Constitution and § 17 of the Bill of Rights in the Kansas Constitution, by reducing his income and property from Thomas being foreclosed employment opportunities for which he was qualified and being denied the right to practice medicine in Kansas child care centers and other places who were mandated to check the Registry before hiring

anyone and to not hire anyone on the list as well as other places that were not required to check the Registry because Hendrickson and Van Osdol re-published the information from the divorce case and the Kansas abuse case.

53.     Investigating allegations of child abuse and/or neglect, accusing someone of child abuse and/or neglect, making a determination of substantiation and/or validation of child abuse and/or neglect, litigating whether a substantiation and/or validation of child abuse and/or neglect is properly determined under state law and appealing and/or defending on appeal the correctness of a substantiation and/or validation of an allegation of child abuse and/or neglect and publically publishing information from the Kansas Abuse Case, is a matter, by Kansas statutes and regulations, that is relegated solely to the state of Kansas, and, therefore a public function of the state of Kansas.

54.     Much of what Hendrickson and Van Osdol published in the Answer was false, the false statements of fact published by Hendrickson and Van Osdol include, but are not limited to:

a.     "[Thomas] sought to use and now seeks to use his position as Trustee to further harass and victimize his children who two courts (including a decision affirmed by the Kansas Supreme Court) have found abused Defendants David Winston and Michelle Tutmaher, See *Thomas R. Winston v. State Dept. of Social and Rehab. Services, 274 Kan, 396 (2002)*" (see Answer, exhibit 9, pg. 8, very top, continuation from pg. 7, of ¶ 14). This is false because the district court and supreme court never made a finding Thomas abused David or Michelle. The substantiation and/or validation of Thomas for abuse of David and/or Michelle only meant a social worker at SRS determined there was enough evidence, from which a reasonable person could conclude it was "more likely than not" David and/or Michelle were abused, and, Thomas was responsible for the abuse of David and Michelle. K.A.R. 30-46-10(e). This is simply a preponderance of evidence standard. It

is not a finding by clear and convincing evidence or beyond a reasonable doubt, and, definitely not a certainty. The SRS administrative hearing officer simply found substantial and competent evidence supported SRS's substantiation and validation and affirmed SRS's substantiation and validation of Thomas regarding the abuse of David, but reversed the substantiation and validation of Thomas for the abuse of Michelle. The SRS appeals committee simply adopted the hearing officer's conclusions of law, that there was enough evidence, from which a reasonable person could conclude it was "more likely than not" David was abused, and, Thomas was responsible for the abuse of David. The district court merely upheld the findings of the hearing officer and the State Appeals Committee finding substantial and competent evidence supported their decisions. The supreme court's opinion was limited to ascertaining from the record whether there was substantial and competent evidence to support the hearing officer's findings. Neither the district court nor the supreme court ever made any finding that Thomas ever harassed or victimized his children.  The Jackson County, Missouri circuit court case number 1016-CV20304 (hereinafter "Missouri trust case") stated, "… the presentation of sufficient evidence was allowed from which an independent finding of abuse could be, and was, made." However, this and any other statement by the court concerning abuse was Obiter Dicta, Obiter Dictum, Obitur Dictum, Dicta or Dictum. Courts use these phrases interchangeably for the same meaning. By definition these phrases mean, a "gratuitous opinion not essential to the court's decision of the issue before it." *Ballenger v. Ballenger, 444 S.W.3d 914, 916 (Mo.App. W.D. 2014)*; *State v. Fortune, 236 Kan. 248, 251, 689 P.2d 1196, 1199 (1984)*. Regardless of which phrase used to describe a court's decision, Obiter Dicta, Obiter Dictum, Obitur Dictum, Dicta or Dictum is not binding precedent or controlling authority and no one is bound by such statements. *Swisher v. Swisher, 124 S.W.3d 477, 482 (Mo.App. W.D. 2003); City of Carthage, Jasper County v. United*

11

*Missouri Bank of Kansas City, N.A., 873 S.W.2d 610, 613-615 (Mo.App. S.D. 1994); State v. Byers, 396 S.W.3d 366, 367 fn. # 2, (Mo.App. S.D. 2012); Law v. Law Co., 295 Kan. 551, 564, 289 P.3d , 1094, 1066 (2012); Bussman v. Safeco Ins. Co. of Am., 317 P.3d 70, 82, 298 Kan. 700 (2014)*. We know the statements in the opinion or decision from the Missouri trust case regarding abuse was simply Obiter Dicta, Obiter Dictum, Obitur Dictum, Dicta or Dictum because the judgment(s) of the court in the Missouri trust case said, "Whether or not Thomas abused the Twins, either physically or mentally, is irrelevant to the Court's decision. … This finding of abuse, however, has no impact on the decision in this case."

b.      "Indeed, Plaintiff has previously expressed his belief that he could use his position as trustee to "punish the twins for lack of affection" after he abused them as noted in the Jackson County Circuit Court Judgment and Order at p. 9 and 12 Exh. 3". (see Answer, exhibit 9, pg. 8, very top, continuation from pg. 7, of ¶ 14). The decision of the court in the Missouri trust case does not state Thomas expressed his belief that he could use his position as trustee to "punish the twins for lack of affection", rather, this was a conclusion drawn by the court. The conclusion does not make it true. This statement is false because any statement by the court in the Missouri trust case, concerning abuse, was Obiter Dicta, Obiter Dictum, Obitur Dictum, Dicta or Dictum because it wasn't relevant to the Missouri trust case. As dictum, the court's conclusion is not binding precedent or controlling authority and no one is bound by such statements. *Swisher v. Swisher, 124 S.W.3d 477, 482 (Mo.App. W.D. 2003); City of Carthage, Jasper County v. United Missouri Bank of Kansas City, N.A., 873 S.W.2d 610, 613-615 (Mo.App. S.D. 1994); State v. Byers, 396 S.W.3d 366, 367 fn. # 2, (Mo.App. S.D. 2012); Law v. Law Co., 295 Kan. 551, 564, 289 P.3d , 1094, 1066 (2012); Bussman v. Safeco Ins. Co. of Am., 317 P.3d 70, 82, 298 Kan. 700 (2014)*;

c.      "This action was and has been filed by verified child abuser Thomas Winston and his Counsel Todd Wilhelmus for the improper and malicious purpose of harassing and punishing his victims" (see Answer, exhibit 9, pg. 8, very top, continuation from pg. 7, of ¶ 14). Thomas is not a "verified child abuser". As previously stated, any statement by the court in the Missouri trust case, concerning abuse, was Obiter Dicta, Obiter Dictum, Obitur Dictum, Dicta or Dictum, and, no court in Kansas declared him to be a "verified child abuser". Webster's Third New International Dictionary gives the definition of 'verify' as "to confirm or substantiate in law by oath or proof." *State ex rel. May Dept. Stores Co. v. Weinstein, 395 S.W.2d 525, 527 (Mo.App. E.D. 1965)*. Black's Law Dictionary, Fifth Edition, defines 'verify' "to confirm or substantiate by oath or affidavit. … To prove to be true; to confirm or establish the truth or truthfulness". Clearly the Missouri trust case didn't confirm or substantiate abuse by Thomas by oath or affidavit. Any alleged abuse wasn't even relevant to the proceeding.; and

d.      "On July 19, 2002, the Supreme Court of Kansas affirmed a finding by the Kansas Department of Social and Rehabilitation Services' (SRS) Appeals Committee finding that Plaintiff Thomas R. Winston physically abused Defendant David Winston and mentally abused both Defendant David Winston and Defendant Michelle Tutmaher. *See Thomas R. Winston v State Department of Social and Rehab Services. 274 Kan. 396 (2002)*" (see Answer, exhibit 9, pg. 10, ¶ 3). Nothing about this statement is correct. The supreme court's opinion was limited to ascertaining from the record whether there was substantial competent evidence to support the hearing officer's findings.

55.     The allegations of abuse by Thomas, contained in the Answer filed by Hendrickson and Van Osdol, came directly from the records made public by the state of Kansas from the Kansas abuse case.

56.     Without the state of Kansas prosecuting the Kansas abuse case and making the information public, Hendrickson and Van Osdol would not have had the information, nor could they make the allegations of abuse contained in the Answer they filed in the Kansas trust case.

57.     The Kansas judicial branch placed its imprimatur on public disclosure, usage, dissemination and republication of the information contained in the Kansas abuse case, when it publically published its opinion, and, it created a sufficiently close nexus between the state of Kansas, Hendrickson and Van Osdol that the state of Kansas provided such significant encouragement to Hendrickson and Van Osdol that the republication of the information by Hendrickson and Van Osdol in the answer they filed in the Kansas abuse case may be fairly treated as that of the State itself.

58.     The  republication of the information contained in the Kansas abuse case, by Hendrickson and Van Osdol, in the Kansas trust case, was state action.

59.     The Kansas judiciary made possible for Hendrickson and Van Osdol to obtain the information contained in the Kansas abuse case and republish that information in the Answer filed by Hendrickson and Van Osdol, under color of Kansas state law, pursuant to K.S.A. 60-207 & 60-208, and without the assistance of the Kansas judiciary, the republishing of the information from the Kansas abuse case, in the Kansas trust case, by Hendrickson and Van Osdol would have been impossible and the republishing of the information from the Kansas abuse case by Hendrickson and Van Osdol was a misuse of power, possessed by Hendrickson and Van Osdol, by virtue of state law,

and made possible only because Hendrickson and Van Osdol were clothed with the authority of state law, by the Kansas statutes and the assistance from the Kansas judiciary when it published the information in the Kansas abuse case.

60.    Thomas individually had a constitutional right under the 1st amendment made applicable to the states by the 14th amendment of the U.S. Constitution, of privacy involving familial privacy and autonomy which encompasses prohibiting disclosure of personal matters, contained in the Kansas abuse case, in the Kansas trust case, especially because he was not appearing in the Kansas trust case in his individual capacity, but he was appearing in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston, so as to not stigmatize and/or impose other disabilities that altered and extinguished his freedom to take advantage of employment opportunities, and placed tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol.

61.    Trustee had a right under the 1st amendment made applicable to the states by the 14th amendment to the U.S. Constitution to access the courts, to petition the district court for redress of grievances, and, under due process clauses in the 5th and 14th amendments to the U.S. Constitution to not be retaliated against with irrelevant personal matters when trustee was acting solely in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston and the defendants' actions caused plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity and the defendants' adverse action was substantially based on the plaintiff's exercise of his constitutionally protected right of access to the courts, to petition the court in the Kansas trust case, for redress of grievances.

62.     Hendrickson and Van Osdol violated Thomas's constitutional right to privacy involving familial privacy and autonomy which encompasses prohibiting disclosure of personal matters, and to be free from stigma and/or other disabilities that altered and extinguished his freedom to take advantage of employment opportunities, placed tangible burdens on his employment opportunities and reduced his property by a reduction of income and purchasing power, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol when they republished information from the divorce case and Kansas abuse case in the Kansas trust case, and, Hendrickson and Van Osdol violated trustee's right to access to the courts, to petition the district court for redress of grievances and Trustee's right to due process to not be retaliated against for doing so, with irrelevant personal matters, especially when Thomas was not personally involved in the Kansas trust case, but trustee was acting solely in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston.

63.     As a direct and proximate cause of the actions of Hendrickson and Van Osdol, Thomas Winston was damaged in his individual capacity and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston in that:

a.     He incurred attorney's fees to get the Answer filed by Hendrickson and Van Osdol stricken and sealed;

b.     He incurred medical expenses for treatment;

c.     His medical condition was exacerbated;

d.     His right to petition the government for redress of grievances was violated, chilled, burdened and suppressed sufficiently to chill a person of ordinary firmness from continuing to engage in that activity;

e.      His private familial information and affairs were publicized without due process of law, further stigmatizing him, reducing his income and property by foreclosing employment opportunities for which he was qualified, and being denied the right to practice medicine in places which were not mandated to check the Registry before hiring someone thereby expanding the stigma and disability on Thomas beyond that imposed by the Registry;

f.      He suffered embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering; and

g.      Plaintiff incurred attorneys fees in the prosecution of this action.

64.     The action of Hendrickson and Van Osdol in filing the Answer was wilful, wanton, malicious and fraudulent with a knowing and reckless indifference toward, Thomas Winston and a disregard of, the rights of Thomas Winston, justifying the imposition of punitive or exemplary damages because:

a.      as stated in paragraphs 54, 54a, 54b, 54c and 54d above, the factual statements in the Answer were not true;

b.      the factual statements made by Hendrickson and Van Osdol were intentionally aimed at Thomas personally with the intent to further harm his familial relationships, and the parent-child relationship between Thomas and his children, and, further stigmatize and/or disable Thomas by furthering, continuing and exacerbating the alteration and extinguishment of his freedom to take advantage of employment opportunities, and placing more and greater tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol;

c.      the re-publication of the information in the Kansas abuse case was intended to cost Thomas property interests by reducing his income and property by foreclosing employment opportunities for Thomas for which he was qualified, and being denied the right to practice medicine in other places who were not mandated to check the Abuse and Neglect Registry before hiring anyone thereby expanding the stigma and disability on Thomas beyond that imposed by the Abuse and Neglect Registry;

d.      the re-publication of the information, by Hendrickson and Van Osdol, in the Kansas abuse case was intended to cause Thomas embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering;

e.      Thomas was not a party to the action in his personal capacity, he filed the Kansas trust case in his capacity as trustee, he was entitled to have his personal information, history and familial relationships kept out of the Kansas trust case;

f.      Hendrickson and Van Osdol brought Thomas's  personal information, history and familial relationships into the Kansas trust case for the purpose of punishing Thomas personally and as trustee because Thomas in his capacity as the trustee of the trusts exercised his constitutional right to seek a fee for his work as trustee, seek reimbursement of expenses he incurred as the trustee of the trusts and to establish a lien on the trust corpus to secure his trustee fee and expenses;

g.      Hendrickson and Van Osdol knew the personal information from the Kansas abuse case was irrelevant to the Kansas trust case because Hendrickson and Van Osdol attached to the Answer they filed in the Kansas trust case, copies of 3 judgments from the Missouri trust case and referenced those judgments repeatedly to support the false factual statements about Thomas concerning abuse of David and Michelle, but the judgments dated March 29, 2013 and June 4, 2013

18

both stated in paragraphs 68 & 69 of those judgments, "Whether or not Thomas abused the Twins, either physically or mentally, is irrelevant to the Court's decision. … This finding of abuse, however, has no impact on the decision in this case." Therefore, before Hendrickson and Van Osdol drafted and filed their Answer in the Kansas trust case, they knew, or at least they had been told twice by a court of jurisdiction handling litigation concerning the trusts, issues of abuse of David and/or Michelle were completely irrelevant, but Hendrickson and Van Osdol improperly brought them up again in the Kansas trust case;

h.      Hendrickson and Van Osdol violated the following Kansas statue and supreme court rule by injecting into the Kansas trust case the irrelevant allegations of abuse of David and Michelle:

By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

(1)     It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

(2)     the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery; …

***K.S.A. 60-211(b)***; and

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

## Comments

[1]    The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2]    The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their

20

clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law. ***Kansas Supreme Court Rule 240-3.1***.

WHEREFORE Plaintiff, Thomas R. Winston,  individually and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston prays this court for a judgment in his favor and against Hendrickson and Van Osdol in an amount that is fair and reasonable, for punitive damages, for his costs and expenses incurred herein, including reasonable attorney's fees and for such other and further relief as the court deems just and proper.

## Count II - Kansas State Law - Defamation

65.     Plaintiff incorporates herein by this reference as if fully set forth, paragraphs 1 - 49, 54, 54a, 54b, 54c, 54d  above.

66.     Hendrickson and Van Osdol published or communicated, to other or third parties, including Judge Rhonda Mason, her administrative assistant, Torri Secor, the court reporter for division 4 of the district court, Billie Carey, the personnel of the district court clerk's office who reviewed the Answer and accepted it for filing in the Kansas trust case, and anyone else that

reviewed the Answer by accessing the district court's electronic filing system directly or through the Information Network of Kansas, false statements of fact about Thomas, specifically identifying Thomas, the statements are described in paragraphs 54, 54a, 54b, 54c, 54d above, which statements were contained in the Answer Hendrickson and Van Osdol filed in the district court in the Kansas trust case.

67.    The  false statements of fact contained in the Answer Hendrickson and Van Osdol, filed in the district court in the Kansas trust case, were irrelevant to the Kansas trust case and the district court struck the Answer filed by Hendrickson and Van Osdol, Ordered it sealed and Hendrickson and Van Osdol filed an Amended Answer.

68.    Hendrickson and Van Osdol negligently published or communicated the false statements of fact about Thomas to others.

69.    Hendrickson and Van Osdol published or communicated the false statements of fact about Thomas to others knowing the statements were false or with reckless disregard for whether they were true or false or Hendrickson and Van Osdol had serious doubts as to whether the statements were true at the time they made them.

70.    The false statements of fact about Thomas, made by Hendrickson and Van Osdol, in the answer filed by Hendrickson and Van Osdol in the Kansas trust case, were defamatory in that they tend to harm the reputation of Thomas so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

71.    As a direct and proximate consequence of the publishing the false and defamatory statements about Thomas, in the Answer filed in the Kansas trust case, by Hendrickson and Van Osdol, Thomas suffered damage to his reputation and he incurred attorney's fees to get the Answer

filed by Hendrickson and Van Osdol stricken and sealed and he suffered and continues to suffer tangible burdens on his employment opportunities up to and including loss of employment and other liberty and property interests, such as a reduction in income and property, due to the stigmatizing and/or other disabling effect of the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol that altered and extinguished his freedom to take advantage of employment opportunities, and placed tangible burdens on his employment opportunities, because of his status created and perpetuated by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol.

72.     The action of Hendrickson and Van Osdol in filing the Answer was wilful, wanton, malicious and fraudulent with a knowing and reckless indifference toward, Thomas Winston and a disregard of, the rights of Thomas Winston, justifying the imposition of punitive or exemplary damages because:

a.     as stated in paragraphs 54, 54a, 54b, 54c and 54d above, the factual statements in the Answer were not true;

b.     the factual statements made by Hendrickson and Van Osdol were intentionally aimed at Thomas personally with the intent to further harm his familial relationships, and the parent-child relationship between Thomas and his children, and, further stigmatize and/or  disable Thomas by furthering, continuing and exacerbating the alteration and extinguishment of his freedom to take advantage of employment opportunities, and placing more and greater tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol;

c.      the re-publication of the information in the Kansas abuse case was intended to cost Thomas property interests by reducing his income and property by foreclosing employment opportunities for Thomas for which he was qualified, and being denied the right to practice medicine in other places who were not mandated to check the Abuse and Neglect Registry before hiring anyone thereby expanding the stigma and disability on Thomas beyond that imposed by the Abuse and Neglect Registry;

d.      the re-publication of the information, by Hendrickson and Van Osdol, in the Kansas abuse case was intended to cause Thomas embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering;

e.      Thomas was not a party to the action in his personal capacity, he filed the Kansas trust case in his capacity as trustee, he was entitled to have his personal information, history and familial relationships kept out of the Kansas trust case;

f.      Hendrickson and Van Osdol brought Thomas's  personal information, history and familial relationships into the Kansas trust case for the purpose of punishing Thomas personally and as trustee because Thomas in his capacity as the trustee of the trusts exercised his constitutional right to seek a fee for his work as trustee, seek reimbursement of expenses he incurred as the trustee of the trusts and to establish a lien on the trust corpus to secure his trustee fee and expenses;

g.      Hendrickson and Van Osdol knew the personal information from the Kansas abuse case was irrelevant to the Kansas trust case because Hendrickson and Van Osdol attached to the Answer they filed in the Kansas trust case, copies of 3 judgments from the Missouri trust case and referenced those judgments repeatedly to support the false factual statements about Thomas concerning abuse of David and Michelle, but the judgments dated March 29, 2013 and June 4, 2013

24

both stated in paragraphs 68 & 69 of those judgments, "Whether or not Thomas abused the Twins, either physically or mentally, is irrelevant to the Court's decision. … This finding of abuse, however, has no impact on the decision in this case." Therefore, before Hendrickson and Van Osdol drafted and filed their Answer in the Kansas trust case, they knew, or at least they had been told twice by a court of jurisdiction handling litigation concerning the trusts, issues of abuse of David and/or Michelle were completely irrelevant, but Hendrickson and Van Osdol improperly brought them up again in the Kansas trust case;

  h. Hendrickson and Van Osdol violated the following Kansas statue and supreme court rule by injecting into the Kansas trust case the irrelevant allegations of abuse of David and Michelle:

By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

  (1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

  (2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery; …

**K.S.A. 60-211(b)**; and

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

## Comments

[1]    The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2]    The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their

clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law. ***Kansas Supreme Court Rule 240-3.1***.

WHEREFORE Plaintiff, Thomas R. Winston,  individually and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston prays this court for a judgment in his favor and against Hendrickson and Van Osdol in an amount that is fair and reasonable, for punitive damages, for his costs and expenses incurred herein, and for such other and further relief as the court deems just and proper.

## Count III - Kansas State Law - Abuse of Process

73.     Plaintiff hereby incorporates herein by this reference as if fully set forth paragraphs 1 - 49, 54, 54a, 54b, 54c, 54d  above.

74.     Hendrickson and Van Osdol knowingly made an illegal or improper use of judicial process by filing the Answer in the Kansas trust case.

75.     Hendrickson and Van Osdol filed the Answer in the Kansas trust case for the invalid ulterior purpose of embarrassing, harassing, humiliating, and/or causing pain, anxiety, mental

distress and suffering, sleeplessness, hardship and chilling, burdening and infringing upon Trustee's right to access the courts to petition for redress of grievances in his capacity as trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston, and, to stigmatize and expand the stigmatization of Thomas beyond that of being placed on the Registry to cause him loss of employment opportunities beyond those that must contact the Registry before hiring someone, and placing tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case in turn costing him property due to a decrease in income from the reduction or elimination of employment opportunities.

76.     The Answer filed by Hendrickson and Van Osdol in the Kansas trust case was the direct and proximate cause of damage to Thomas individually and in his capacity as trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston in that:

a.     Plaintiff incurred attorney's fees to get the Answer filed by Hendrickson and Van Osdol stricken and sealed;

b.     He incurred medical expenses for treatment;

c.     His medical condition was exacerbated; and

d.     He suffered embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering;

e.     He suffered damage to his reputation;

f.     His constitutional right to access to the courts to petition for redress of grievances was chilled, burdened, infringed upon and diminished; and

g.     He suffered and continues to suffer tangible burdens on his employment opportunities up to and including loss of employment and other liberty and property interests, such as a reduction

in income and property, due to the stigmatizing and/or other disabling effect of the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol that altered and extinguished his freedom to take advantage of employment opportunities, and placed tangible burdens on his employment opportunities, because of his status created and perpetuated by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol.

77.     The action of Hendrickson and Van Osdol in filing the Answer was wilful, wanton, malicious and fraudulent with a knowing and reckless indifference toward, Thomas Winston and a disregard of, the rights of Thomas Winston, justifying the imposition of punitive or exemplary damages because:

a.     as stated in paragraphs 54, 54a, 54b, 54c and 54d above, the factual statements in the Answer were not true;

b.     the factual statements made by Hendrickson and Van Osdol were intentionally aimed at Thomas personally with the intent to further harm his familial relationships, and the parent-child relationship between Thomas and his children, and, further stigmatize and/or disable Thomas by furthering, continuing and exacerbating the alteration and extinguishment of his freedom to take advantage of employment opportunities, and placing more and greater tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol;

c.     the re-publication of the information in the Kansas abuse case was intended to cost Thomas property interests by reducing his income and property by foreclosing employment opportunities for Thomas for which he was qualified, and being denied the right to practice medicine in other places who were not mandated to check the Abuse and Neglect Registry before hiring

anyone thereby expanding the stigma and disability on Thomas beyond that imposed by the Abuse and Neglect Registry;

       d.      the re-publication of the information, by Hendrickson and Van Osdol, in the Kansas abuse case was intended to cause Thomas embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering;

       e.      Thomas was not a party to the action in his personal capacity, he filed the Kansas trust case in his capacity as trustee, he was entitled to have his personal information, history and familial relationships kept out of the Kansas trust case;

       f.      Hendrickson and Van Osdol brought Thomas's  personal information, history and familial relationships into the Kansas trust case for the purpose of punishing Thomas personally and as trustee because Thomas in his capacity as the trustee of the trusts exercised his constitutional right to seek a fee for his work as trustee, seek reimbursement of expenses he incurred as the trustee of the trusts and to establish a lien on the trust corpus to secure his trustee fee and expenses;

       g.      Hendrickson and Van Osdol knew the personal information from the Kansas abuse case was irrelevant to the Kansas trust case because Hendrickson and Van Osdol attached to the Answer they filed in the Kansas trust case, copies of 3 judgments from the Missouri trust case and referenced those judgments repeatedly to support the false factual statements about Thomas concerning abuse of David and Michelle, but the judgments dated March 29, 2013 and June 4, 2013 both stated in paragraphs 68 & 69 of those judgments, "Whether or not Thomas abused the Twins, either physically or mentally, is irrelevant to the Court's decision. … This finding of abuse, however, has no impact on the decision in this case." Therefore, before Hendrickson and Van Osdol drafted and filed their Answer in the Kansas trust case, they knew, or at least they had been told twice by a

court of jurisdiction handling litigation concerning the trusts, issues of abuse of David and/or Michelle were completely irrelevant, but Hendrickson and Van Osdol improperly brought them up again in the Kansas trust case;

  h. Hendrickson and Van Osdol violated the following Kansas statue and supreme court rule by injecting into the Kansas trust case the irrelevant allegations of abuse of David and Michelle:

By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

  (1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

  (2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; …

***K.S.A. 60-211(b)***; and

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is

not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

**Comments**

[1]     The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2]     The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous,

however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law. ***Kansas Supreme Court Rule 240-3.1***.

WHEREFORE Plaintiff, Thomas R. Winston,  individually and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston prays this court for a judgment in his favor and against Hendrickson and Van Osdol in an amount that is fair and reasonable, for punitive damages, for his costs and expenses incurred herein, and for such other and further relief as the court deems just and proper.

### Count IV - Kansas State Law - Invasion of Privacy

77.     Plaintiff hereby incorporates herein by this reference as if fully set forth paragraphs 1 - 49, 54, 54a, 54b, 54c, 54d  above.

78.     Hendrickson and Van Osdol gave unreasonable publicity to Thomas's private life, when Hendrickson and Van Osdol filed the Answer in the Kansas trust case, by giving publicity to the Kansas abuse case and divorce case, both involving Thomas, both being matters concerning the private life of Thomas and the publicity given Thomas's private life, by the Answer filed in the Kansas trust case, would be highly offensive to a reasonable person, and not of legitimate concern to the public.

79.     Hendrickson and Van Osdol gave publicity about Thomas that placed him before the public in a false light of a kind highly offensive to a reasonable person when they filed the Answer in the Kansas trust case that publicized information from the divorce case and Kansas abuse case.

80.     Information from the divorce case and Kansas abuse case, publicized by Hendrickson and Van Osdol in the Kansas trust case, was false as set forth in paragraphs 54, 54a, 54b, 54c, 54d above.

81.     The Answer filed by Hendrickson and Van Osdol in the Kansas trust case was the direct and proximate cause of damage to Thomas individually and in his capacity as trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston in that:

a.      Plaintiff incurred attorney's fees to get the Answer filed by Hendrickson and Van Osdol stricken and sealed;

b.      He incurred medical expenses for treatment;

c.      His medical condition was exacerbated;

d.      He suffered embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering;

e.      His constitutional right to access to the courts to petition for redress of grievances was chilled, burdened, infringed upon and diminished;

f.      He suffered and continues to suffer tangible burdens on his employment opportunities up to and including loss of employment and other liberty and property interests, such as a reduction in income and property, due to the stigmatizing and/or other disabling effect of the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol that altered and extinguished his freedom to take advantage of employment opportunities, and placed tangible

34

burdens on his employment opportunities, because of his status created and perpetuated by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol.

82.     The action of Hendrickson and Van Osdol in filing the Answer was wilful, wanton, malicious and fraudulent with a knowing and reckless indifference toward, Thomas Winston and a disregard of, the rights of Thomas Winston, justifying the imposition of punitive or exemplary damages because:

a.     as stated in paragraphs 54, 54a, 54b, 54c and 54d above, the factual statements in the Answer were not true;

b.     the factual statements made by Hendrickson and Van Osdol were intentionally aimed at Thomas personally with the intent to further harm his familial relationships, and the parent-child relationship between Thomas and his children, and, further stigmatize and/or disable Thomas by furthering, continuing and exacerbating the alteration and extinguishment of his freedom to take advantage of employment opportunities, and placing more and greater tangible burdens on his employment opportunities, because of his status created by the re-publication of information contained in the Kansas abuse case by Hendrickson and Van Osdol;

c.     the re-publication of the information in the Kansas abuse case was intended to cost Thomas property interests by reducing his income and property by foreclosing employment opportunities for Thomas for which he was qualified, and being denied the right to practice medicine in other places who were not mandated to check the Abuse and Neglect Registry before hiring anyone thereby expanding the stigma and disability on Thomas beyond that imposed by the Abuse and Neglect Registry;

     d.      the re-publication of the information, by Hendrickson and Van Osdol, in the Kansas abuse case was intended to cause Thomas embarrassment, anxiety, nervousness, sleeplessness, emotional distress, pain and suffering;

     e.      Thomas was not a party to the action in his personal capacity, he filed the Kansas trust case in his capacity as trustee, he was entitled to have his personal information, history and familial relationships kept out of the Kansas trust case;

     f.      Hendrickson and Van Osdol brought Thomas's  personal information, history and familial relationships into the Kansas trust case for the purpose of punishing Thomas personally and as trustee because Thomas in his capacity as the trustee of the trusts exercised his constitutional right to seek a fee for his work as trustee, seek reimbursement of expenses he incurred as the trustee of the trusts and to establish a lien on the trust corpus to secure his trustee fee and expenses;

     g.      Hendrickson and Van Osdol knew the personal information from the Kansas abuse case was irrelevant to the Kansas trust case because Hendrickson and Van Osdol attached to the Answer they filed in the Kansas trust case, copies of 3 judgments from the Missouri trust case and referenced those judgments repeatedly to support the false factual statements about Thomas concerning abuse of David and Michelle, but the judgments dated March 29, 2013 and June 4, 2013 both stated in paragraphs 68 & 69 of those judgments, "Whether or not Thomas abused the Twins, either physically or mentally, is irrelevant to the Court's decision. … This finding of abuse, however, has no impact on the decision in this case." Therefore, before Hendrickson and Van Osdol drafted and filed their Answer in the Kansas trust case, they knew, or at least they had been told twice by a court of jurisdiction handling litigation concerning the trusts, issues of abuse of David and/or

Michelle were completely irrelevant, but Hendrickson and Van Osdol improperly brought them up again in the Kansas trust case;

h.      Hendrickson and Van Osdol violated the following Kansas statue and supreme court rule by injecting into the Kansas trust case the irrelevant allegations of abuse of David and Michelle:

By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

(1)     It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

(2)     the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; …

*K.S.A. 60-211(b)*; and

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension,

modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

**<u>Comments</u>**

[1]      The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2]      The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the

purpose of harassing or maliciously injuring a person or if the lawyer

is unable either to make a good faith argument on the merits of the

action taken or to support the action taken by a good faith argument

for an extension, modification or reversal of existing law. ***Kansas***

***Supreme Court Rule 240-3.1***.

WHEREFORE Plaintiff, Thomas R. Winston, individually and in his capacity as the trustee

of 5 irrevocable non-testamentary trusts of Bernard H. Winston prays this court for a judgment in

his favor and against Hendrickson and Van Osdol in an amount that is fair and reasonable, for

punitive damages, for his costs and expenses incurred herein, and for such other and further relief

as the court deems just and proper.

Respectfully submitted,

R. Todd Wilhelmus          KS Bar No. 14742
433 East 72nd Street, Kansas City, Mo 64131
Telephone No.          (816) 255-9088
Facsimile No.          (816) 444-2403
ToddWilhelmus@gmail.com
ATTORNEY FOR PLAINTIFF