# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS R. WINSTON, individually and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston,<br><br>       Plaintiff,<br><br>v.<br><br>VAN OSDOL, P.C. and<br>ANNE LINTON POND HENDRICKSON,<br><br>       Defendants. | Case No. 21-02168-KHV-KGG |

## DEFENDANT HENDRICKSON'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S HENDRICKSON'S MOTION TO DISMISS

Defendant Hendrickson, through counsel, briefly replies to plaintiff's response in opposition to her motion to dismiss.

Plaintiff's theory on which the jurisdiction of this court rests is his 42 U.S.C. §§1983 and 1988 claims. The claim is not viable and ought to be dismissed with prejudice. If the court dismisses these claims, the court also should exercise its supplemental jurisdiction to likewise dismiss plaintiff's state-law claims with prejudice.

Both plaintiff's complaint (doc. no. 1, ¶¶ 48-64) and his response in opposition to defendants' motions to dismiss (doc. no. 13, pp. 4-8) conflate two separate and independent activities in an effort to create the essential element of his §1983 claim, state action. He does this by citing in some detail the Kansas administrative and judicial proceedings that culminated in the result found in *Winston v. State Dep'Soc. & Rehab. Servs.*, 274 Kan. 396, 49 P.3d 1274 (2002) ("the abuse case"). Using this case as a crucial steppingstone, plaintiff then argues that

defendants' use of the public information disclosed in the abuse case in a subsequent and entirely separate legal proceeding, *Winston v. Winston and Tutmaher*, Johnson County (Kansas) District Court, case no. 2020 CV 1537 ("the trust case"), was an illegitimate and wrongful coordination between the state of Kansas and defendants. This, he claims, establishes the "state action" element. *See*, doc. no. 1 at ¶¶ 56-59 ("Hendrickson and Van Osdol were clothed with the authority of state law" and similar assertions).

This manifestly erroneous argument is founded on an irrational creation, the conflation of the "abuse case" and the "trust case." The chronological disconnect between the abuse case which came to an ultimate conclusion in 2002 and the defendants' efforts on their clients' behalf in the 2020 trust case cannot support the weight of plaintiff's core state-action claim. This is because plaintiff supplies no factual bridge to connect these two proceedings, separated by *almost 20 years*, in order to create the required state action[1]. Thus, plaintiff's allegations that the state of Kansas and the defendants cooperated across this temporal divide without citation to any alleged fact credibly demonstrating state action amounts to mere legal conclusion. Because the allegations of state action are mere legal conclusion, plaintiff utterly fails to satisfy the first step of the two-step *Ashcroft*[2] analysis demanded by a Rule 12(b)(6) motion. Because plaintiff does not survive this initial analysis, the court plainly need not reach whether any test ought to be

---

[1] Plaintiff makes no effort at all to show facts that demonstrate how these two chronologically widely separated actions could possibly be coordinated by defendants to plaintiff's detriment. The following quote is an example of assertions long on contention and short on fact. "The Kansas judicial branch placed its imprimatur on public disclosure, usage, dissemination and republication of the information contained in the Kansas abuse case, when it publically published its opinion, and, it created a sufficiently close nexus between the state of Kansas, Hendrickson and Van Osdol that the state of Kansas provided such significant encouragement to Hendrickson and Van Osdol that the republication of the information by Hendrickson and Van Osdol in the answer they filed in the Kansas abuse case *may be fairly treated as that of the State itself.*" Doc. no. 1, ¶ 57. One finds allegations to similar effect at *id.,* ¶ 58, 59. Indeed, if these allegations were credited at face value, one wonders why the State itself is not one of the defendants here.

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

applied to determine the existence of state action. Even if such a test were required, no matter which test is invoked[3], plaintiff's complaint, and the response in opposition, assert no facts to state a plausible claim of state action against the defendants who are private actors. Consequently, the §1983 claim against the defendants must be dismissed with prejudice.

If this court dismisses plaintiff's §§ 1983 and 1988 claims, the court should also adjudicate plaintiff's state law claims. Counsel's consistent experience in this district has been that the court will decline to exercise its supplemental jurisdiction over state-law claims.[4] Nevertheless, defendant Hendrickson urges this court to determine these claims because genuine judicial economy, convenience and fairness to the parties, avoidance of piece-meal federal-state litigation, conservation of the parties' resources, and a speedy resolution of plaintiff's claims would result from this court's consideration of plaintiff's state law claims. F.R.Civ.P. 1.

With regard to the allegedly defamatory statements forming the core of plaintiff's state-law claims[5], defendant Van Osdol has raised the absolute-immunity argument. Doc. no. 11 at 5-7. Defendant Hendrickson has adopted it for herself. Doc. no. 14. In his response in opposition,

---

[3] *See*, doc. no. 13 at 4-8.

[4] *See, e.g., Schwab v. State of Kansas*, No. 2016-CV-4033-DDC-KGS, slip op. at 31-32 (D.Kan. June 30, 2017) ("Under 28 U.S.C. § 1367(c), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction is one committed to a district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie- Mellon Univ.*, 484 U.S. at 350 n.7; see also *Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (holding that where pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction" (citations and internal quotation marks omitted)). Also, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).")

[5] Doc. no. 1, ¶ 54.

plaintiff asserts that absolute immunity[6] does not apply when the statements are not "relevant to the issues in the proceeding." Doc. no. 13 at 10. He claims that is the case here. But the trust-case defendants' reference to plaintiff's prior adjudication as a child abuser was relevant.

Plaintiff's claim for trustee fees in the trust case was yet another example of his ongoing efforts to deprive his children of the benefits of the trusts established for them by their grandfather and to oppress them. For a father to litigate against his children for such fees under the circumstances cited by the Jackson County (Missouri) Circuit Court[7] in light of an adjudication of abuse by this state's highest court was continued oppression of his children. For example, the Jackson County Circuit Court found that plaintiff damaged "the interests of the Twins" because of "personal feelings and desires." He failed or refused "to provide for payment of their educational expenses, as well as the automobile and living allowances allotted the Twins pursuant . . . to the 1990 Trust" while they were in college.[8] Thus, the allegedly offending statements in the Answer and Counterclaim were relevant, to the defendants, to the issues in the trust case as they bore on plaintiff's (mis)conduct as a trustee. Assertion of plaintiff's continued oppression of his now-adult children by seeking inappropriate trustee fees was consistent with his past course of abusive conduct toward them. Further, the statements were not those merely of the defendants in the trust case, or their counsel, but findings of the Jackson County (Missouri) Circuit Court after a hearing.[9] The statements plaintiff finds objectionable were germane to the Johnson County District Court proceedings. An "absolute privilege . . . attaches to statements by any participant in a judicial proceeding which the speaker could reasonably have thought to be

---

[6] *See Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973), and *Clear Water Truck Co. v. M. Bruenger & Co.*, 214 Kan. 139, 519 P.2d 682 (1974) (The latter case is referenced in the response in opposition but not cited in it, doc. no. 13 at 9-10.).

[7] *See* doc. no. 1, ex. 9, ex. 3 (file stamp pp. 63-65).

[8] Doc. no. 1, ex. 9, ex. 3 (file stamp pp. 61,62).

[9] *See* doc. no. 1, ex. 9, ex. 2 (file stamp p. 47).

4

relevant and which were made in connection with such proceeding." *Clear Water Truck Co.*, 214 Kan. at 141-142. Accordingly, the absolute-privilege defense applies to the allegedly defamatory statements so that this state-law claim ought to be dismissed with prejudice.

As before, this defendant incorporates by reference defendant Van Osdol's other arguments and authorities, doc. no. 11 at 5-9, as support for her motion to dismiss plaintiff's remaining state-law claims.

In summary, plaintiff has failed to meet the minimum pleading requirements set out in the *Ashcroft v. Iqbal* case for a cause of action pursuant to 42 U.S.C. §§ 1983 and 1988. He has likewise failed to assert legally sufficient state-law claims for defamation, invasion of privacy and abuse of process. Accordingly, his complaint ought to be dismissed in its entirety with prejudice pursuant to F.R.Civ.P. 12(b)(6).

Respectfully submitted,

WALLACE SAUNDERS, Chartered

By /s/ Timothy Finnerty
Timothy Finnerty #10946
tfinnerty@wallacesaunders.com
400 O.W. Garvey Center
200 West Douglas
Wichita, KS 67202
Phone: (316) 269-2100
Fax: (316) 269-2479
*Attorney for Defendant*
*Anne Linton Pond Hendrickson*

5

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 7, 2021, I filed the above and foregoing **DEFENDANT HENRICKSON'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S HENDRICKSON'S MOTION TO DISMISS** with the United States District Court Clerk using the CM/ECF system which will send notification and provide access to a copy of this filing to:

R. Todd Wilhelmus
Attorney at Law
433 East 72nd Street
Kansas City, MO 64131
ToddWilhelmus@gmail.com
*Attorney for Plaintiff*

_____
Timothy J. Finnerty