IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS R. WINSTON, individually and in his capacity as the trustee of 5 irrevocable non-testamentary trusts of Bernard H. Winston,<br><br>Plaintiff,<br><br>v.<br><br>VAN OSDOL, P.C. and<br>ANNE LINTON POND HENDRICKSON,<br><br>Defendants. | CIVIL ACTION<br><br>No. 21-2168-KHV |

## MEMORANDUM AND ORDER

On April 9, 2021, Thomas R. Winston filed suit against Van Osdol, P.C. and Anne Linton Pond Hendrickson. Plaintiff alleges the following claims: deprivation of constitutional rights secured under 42 U.S.C. § 1983 and § 1988, and defamation, abuse of process and invasion of privacy in violation of Kansas law. This matter is before the Court on Defendant Van Osdol, P.C.'s Motion To Dismiss For Failure To State A Claim Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. #11) filed May 4, 2021, Defendant Hendrickson's Motion To Dismiss (Doc. #14) filed May 20, 2021 and Defendant Van Osdol, P.C.'s Motion For Sanctions Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. #17) filed June 1, 2021. For reasons stated below, the Court sustains defendants' motions to dismiss in part and overrules the motion for sanctions.

## Legal Background

In ruling on defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing his claim with enough factual matter to suggest he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's complaint alleges as follows:

Thomas R. Winston is a resident of Johnson County, Kansas. After November 9, 1989, he served as trustee of five irrevocable non-testamentary trusts which his father, Bernard H. Winston ("Bernard") created for the benefit of Thomas's children: David Winston ("David") and Michelle Winston Tutmaher ("Michelle"). Van Osdol, P.C. is a professional legal corporation in Missouri. Anne Linton Pond Hendrickson, an attorney with the Van Osdol law firm, represented David and Michelle in litigation, described below, with their father.

On March 16, 1998, Thomas's then spouse, the mother of David and Michelle, filed for divorce. Five months later, on August 23, 1998, the Kansas Department of Social and Rehabilitative Services ("SRS")[1] received a confidential report that Thomas had abused David. Pursuant to administrative regulations, SRS substantiated the report. As a result, it placed Thomas's name in the Kansas Abuse and Neglect Central Registry (the "Registry"). The Registry is a confidential listing of individuals who are not permitted to work, reside or volunteer in Kansas childcare facilities.

On January 14, 1999, SRS received a confidential report that Thomas had also abused Michelle. On April 2, 1999, it notified Thomas that it had substantiated that allegation. On May 18, 1999, SRS withdrew its finding that Thomas had abused David. On May 20, 1999, Thomas requested an evidentiary hearing on Michelle's abuse allegation before the SRS administrative hearings section.

On August 3, 1999, SRS sent Thomas a new notice of substantiation regarding David. It also sent Thomas an amended notice of substantiation regarding Michelle. SRS determined that a reasonable person could "more likely than not" conclude that Thomas had abused both David and

---

[1] Today, this administrative agency is called the Kansas Department for Children and Families.

Michelle, and so notified Thomas.

In August of 1999, the district court finalized the Winston divorce. The district court unsealed the documents and allegations from the Kansas abuse case for use in the divorce case.

On February 15, 16 and 18, 2000, SRS conducted an administrative hearing on Thomas's alleged abuse of David and Michelle. On March 8, 2020, the presiding officer affirmed the SRS determination that Thomas had abused David, but reversed the determination as to Michelle. Thomas appealed to the SRS Kansas Appeals Committee the officer's determination regarding David, and SRS cross-appealed the officer's reversal regarding Michelle.[2] On September 21, 2000, the Committee issued a final order that adopted the presiding officer's conclusions.

On October 12, 2000, Thomas filed a petition for review in district court. The district court upheld the findings of the presiding officer and the Committee. The district court also denied Thomas's motion to re-seal the divorce file. Thomas timely filed a notice of appeal to the Kansas Court of Appeals. The Kansas Supreme Court referred the case to itself and affirmed the decisions of the presiding officer and the State Appeals Committee.

The abuse allegations from the divorce case resurfaced in 2020, in a Kansas trust case between Thomas and his children. From November 9, 1989 through at least March 3, 2021, Thomas served as trustee of multiple trusts that included David and Michelle as beneficiaries. The trusts ended when David and Michelle turned 30. The terms of the trust do not address reimbursement of expenses or compensation for the trustee.

Van Osdol and Hendrickson represented David and Michelle in the trust litigation. Over

---

[2] The State Appeals Committee is a three-member panel made up of individuals from SRS who are knowledgeable on SRS programs and policies. A party may ask the Committee to review the presiding officer's order. If dissatisfied with the Committee's final order, a party may file a petition for review with the district court clerk.

several months, Thomas's attorneys asked the children to pay a trustee fee and reimburse his expenses. On February 20, 2020, Hendrickson sent an email to Thomas's attorney, explaining that "[t]he trusts are silent in regards to fees and David and Michelle will not agree to pay any fees short of being ordered to do so by the Court." On March 15, 2020, Thomas sent Hendrickson a proposal requesting reasonable compensation for final distribution. On March 16, 2020, Hendrickson sent objections to the proposal.

Thomas alleged that he faced actual injury, loss of administration expenses and deprivation of a reasonable fee for his services. On March 25, 2020, in the District Court of Johnson County, Kansas, he filed a petition for declaratory judgment seeking expenses and fees. On April 29, 2020, Hendrickson and Van Osdol filed an answer and counterpetition which republished information from the divorce file about the abuse allegations. Thomas alleges that the answer contained false information, intentionally aimed to harm him. His claims relate to the following allegations in the answer and counterpetition:

> [Thomas] sought to use and now seeks to use his position as trustee to further harass and victimize his children who two courts (including a decision affirmed by the Kansas Supreme Court) have found abused Defendants David Winston and Michelle Tutmaher.
>
> Indeed, [p]laintiff has previously expressed his belief that he could use his position as trustee to "punish the twins for lack of affection" after he abused them as noted in the Jackson County Circuit Court Judgement and Order.
>
> This action was and has been filed by verified child abuser Thomas Winston and his Counsel Todd Wilhelmus for the improper and malicious purpose of harassing and punishing his victims.
>
> On July 19, 2002, the Supreme Court of Kansas affirmed a finding by the Kansas Department of Social and Rehabilitation Services[] (SRS) Appeals Committee finding that [p]laintiff Thomas R. Winston physically abused David Winston and mentally abused both David Winston and Defendant Michelle Tutmaher.

Complaint For Damages (Doc. #1) filed April 9, 2021, ¶¶ 54(a)–(d).

On January 14, 2021, Thomas, David and Michelle agreed to dismiss the trust litigation with prejudice. On January 22, 2021, the state court dismissed the case. Three months later, on April 9, 2021, Thomas filed this suit. As noted, he asserts the following claims: deprivation of constitutional rights secured under 42 U.S.C. § 1983 and § 1988, and defamation, abuse of process and invasion of privacy in violation of Kansas law.

## Analysis

Defendants argue that the Court should dismiss plaintiff's entire complaint for failure to state a claim upon which relief may be granted. The Court considers each claim in turn.

**I.     Deprivation Of Rights Claims Under 42 U.S.C. § 1983 And § 1988**

Plaintiff alleges that when defendants filed the answer and counterpetition in the trust litigation, they deprived him of his constitutional right to familial privacy and autonomy in violation of 42 U.S.C. § 1983. Plaintiff also alleges that defendants retaliated against him for exercising his right to petition the state district court for redress of grievances, and in doing so, deprived him of due process under the Fifth and Fourteenth Amendments of the United States Constitution. Defendants argue that plaintiff's allegations are insufficient to support a finding of state action, which is required to state a claim under Section 1983.

Section 1983 holds liable every person "who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, [another person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). To state a claim under Section 1983, plaintiff must allege both that (1) defendants deprived him of a right secured by the Constitution or the laws of the United States and (2) defendants acted under color of the law of a state, territory or the District of Columbia. See Adickes v. S.H. Kress & Co.,

398 U.S. 144, 150 (1970).

The Court evaluates whether challenged conduct constitutes state action using a flexible approach. Wasatch Equal. v. Alta Ski Lifts Co., 820 F.3d 381, 386 (10th Cir. 2016) (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974)). In some instances, courts apply the nexus test, asking whether "a sufficiently close nexus [exists] between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. at 387. In other instances, courts apply a joint action test, asking whether the "private party is a willful participant in joint activity with the State or its agents." Id. (quoting Adickes, 398 U.S. at 152). Finally, courts have applied a public function test, asking whether the private entity exercises "powers traditionally exclusively reserved to the State." Id. at 387 (quoting Jackson, 419 U.S. at 352). Each test "really gets at the same issue," asking whether the relation between a private party and the alleged constitutional violation is sufficiently close as to consider the private party a state entity for purposes of a Section 1983 suit. Janny v. Gamez, 8 F.4th 883, 919 (10th Cir. 2021) (quoting Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 596 (10th Cir. 1999)).

To establish state action, plaintiff's complaint pleads the following facts: (1) in filing an answer and counterpetition for David and Michelle in the trust case, defendants exercised a right or privilege which the State of Kansas created; (2) the State of Kansas has exclusive authority to investigate and substantiate allegations of child abuse, which is a public function of the State; and (3) absent the state child abuse prosecution, defendants would not have had the information contained in their answer and counterpetition. See Complaint For Damages (Doc. #1), ¶¶ 50, 53–56, 58. Defendants argue that even if true, these facts do not make them state actors, and that they did not conspire with state officials to invoke state action or willfully engage in joint activity with

the State or its agents.

Plaintiff's allegations do not plausibly allege state action under any of the tests.

### A. Nexus Test

Under the nexus test, plaintiff must demonstrate a sufficiently close nexus between the government and the private parties' challenged conduct, such that the conduct "may be fairly treated as that of the state itself." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1448 (10th Cir. 1995) (quoting Jackson, 419 U.S. at 351). To meet this test, the State must have extended such strong coercion or encouragement to the private party that the action is actually that of the State. See Johnson v. Rodrigues, 293 F.3d 1196, 1203 (10th Cir. 2002). Merely availing oneself of state judicial procedures is insufficient to constitute state action. Id. (citing Lugar, 457 U.S. at 939 n. 21).

Plaintiff argues that the State of Kansas significantly aided defendants, creating a nexus between them, by unsealing the divorce case that publicized the Kansas abuse case. Plaintiff's Response To Defendants' Motion To Dismiss FRCP 12(B)(6) (Doc. #13) filed May 16, 2021 at 6–7. Plaintiff argues that but for the unsealing, defendants would "not have had anything concerning abuse to allege in the[] answer" and counterpetition.

Defendants argue that plaintiff has not alleged the requisite coercive power or significant encouragement by the State. The district court denied Thomas's motion to re-seal his divorce file and 20 years later, defendants included information from that public record in their answer and counterpetition. Plaintiff does not allege that the state court or any state official encouraged or coerced defendants to do so. Plaintiff has not alleged facts which establish overt, significant assistance of state officials, as required to create a nexus between that state action and defendants'

actions.

Under plaintiff's argument, any citation of public court records could be potentially actionable under Section 1983—and plaintiff has cited no Kansas authority in support of that novel proposition.

        B.      <u>Joint Action Test</u>

Under the joint action test, state action is present if a private party willfully participates in joint action with the State or its agents. <u>Gallagher</u>, 49 F.3d at 1453; <u>see</u> <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980)). Courts generally "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." <u>Gallagher</u>, 49 F.3d at 1453; <u>see</u> <u>Johnson</u>, 293 F.3d at 1205. To sufficiently allege joint action, the allegations must evidence a "specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action" between the State and the private entities. <u>Gallagher</u>, 49 F.3d at 1455.

Plaintiff argues that defendants satisfy this standard because they willfully obtained aid from the Kansas judiciary, enabling them to publish information from the Kansas divorce case. <u>Complaint For Damages</u> (Doc. #1) at 9–10; <u>Plaintiff's Response To Defendants' Motion To Dismiss FRCP 12(B)(6)</u> (Doc. #13) at 6–7. Under the joint action test, pleadings must specifically allege facts tending to show agreement and concerted action between the State and the private parties. <u>Sigmon v. CommunityCare HMO, Inc.</u>, 234 F.3d 1121, 1126 (10th Cir. 2000). Re-publication of information from a public divorce case, does not constitute joint action between the State and defendants just because the Kansas district court refused to re-seal that case. Plaintiff pleads no facts that the State of Kansas and defendants communicated about the divorce case or communicated in ways that are inconsistent with "normal interplay." <u>Anderson v. Blake</u>, No. CIV-05-0729-HE, 2005 WL 2716302, at *3 (W.D. Okla. Oct. 21, 2005), *aff'd sub nom.* <u>Anderson v.</u>

Suiters, 499 F.3d 1228 (10th Cir. 2007) (existence of multiple contacts between state actor and private party which are not inconsistent with normal interplay does not support joint action inference).

Further, plaintiff's complaint does not allege facts which demonstrate a "shared purpose" by the State and defendants to violate plaintiff's constitutional rights. Anderson, 499 F.3d at 1233. Even if defendants intended to violate plaintiff's rights, the complaint does not plausibly allege that the State of Kansas intended to do so, or that it could have anticipated defendants' pleadings 20 years later. Plaintiff alleges that the Kansas judiciary "placed its imprimatur on public disclosure, usage, dissemination, and republication of the information contained in the Kansas abuse case," but does not claim any specific goal to violate his rights. Complaint For Damages (Doc. #1), ¶ 57. In deciding to not to re-seal the divorce file, the state court balanced the private harm to Thomas against a strong public interest in accessing court records and proceedings. Absent allegations that the State intended to violate plaintiff's constitutional rights in doing so, plaintiff has not stated a valid claim for relief. See Janny, 8 F.4th at 919; see also Anaya, 195 F.3d at 596).

C. Public Function Test

Under the public function test, a private party is a state actor if the State delegates to that party a function "traditionally exclusively reserved to the State." Jackson, 419 U.S. at 352. This test is difficult to satisfy. Gallagher, 49 F.3d at 1456; see Johnson, 293 F.3d at 1203 (arduous standard). "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" Gorenc v. Proverbs, 462 F. Supp. 3d 1137, 1144 (D. Kan. 2020) (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978)). Generally, the test is only satisfied when private parties hold elections or operate a municipality. Marsh v.

Alabama, 326 U.S. 501, 506–07 (1946); Johnson, 293 F.3d at 1203.  The Supreme Court acknowledges that the State regulates many businesses and professions—like doctors and lawyers—but their status as regulated persons or businesses does not "convert their every action, absent more, into that of the State."  Jackson, 419 U.S. at 353–354; see S.F. Arts & Athletics v. U.S. Olympic Comm., 483 U.S. 522, 544 (1987) (exclusive state power very narrow category).

Plaintiff argues that the Kansas judiciary permitted defendants to exercise the public function of publishing the confidential information from the divorce case about the abuse allegations.  Plaintiff's Response To Defendants' Motion To Dismiss FRCP12(B)(6) (Doc. #13) at 8.  Plaintiff argues that because investigating allegations of child abuse is a power reserved explicitly to the State of Kansas, publicizing those facts constitutes state action.  Defendant argues that republishing those findings in a court pleading is a power granted to litigants, not a function exclusively reserved to the State.

The attenuated connection between the abuse investigation and defendants' answer and counterpetition does not satisfy the public function test.  Though lawyers are "officers of the court," a lawyer representing a client is not a state actor under "color of state law."  Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981).  Advancing the undivided interests of a client is a private function.  Id.  The choice to include information from the divorce case about the abuse allegations does not convert defendants' actions into actions that are "in fact [] the exclusive prerogative of the [S]tate of Kansas."  Complaint For Damages (Doc. #1), ¶ 44.

Plaintiff cites Blum v. Yaretsky to support the contention that defendants performed a public function.  457 U.S. 991, 1003 (1982); Plaintiff's Response To Defendant's Motion To Dismiss FRCP 12(B)(6) (Doc. #13) at 8.  In Blum, a nursing home resident alleged that a nursing home violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to

provide him notice of his transfer to a lower-level care facility.  457 U.S. at 996.  To pursue this constitutional violation, respondents pleaded that the nursing home's actions constituted state action.  Id. at 998.  The Supreme Court held that respondents failed to establish that the nursing home engaged in "state action."  Id. at 1012.  In doing so, it distinguished the nursing home's actions from cases where private parties received "the imprimatur of the State," but acknowledged that cases where private parties received "the imprimatur of the State" "shed[s] light upon the analysis" and used it to resolve the case.  Id. at 1003–04.  The Supreme Court acknowledged that nursing homes are privately owned and operated, so the decision to discharge or transfer a patient did not originate with state officials.  Id.

Plaintiff argues that defendants received "the imprimatur of the [State]" when they included the abuse allegations from the divorce case in their pleadings.  Plaintiff's Response To Defendant's Motion To Dismiss FRCP 12(B)(6) (Doc. #13) at 8.  In Blum, however, the Supreme Court expressly acknowledged that a lawyer's decisions while representing his client are "framed in accordance with professional canons of ethics, rather than dictated by any rule of conduct imposed by the State."[3]  457 U.S. at 1009.  It specifically analogized a lawyer's conduct to the conduct of a nursing home, distinguishing these acts from private parties' actions after receiving "the imprimatur from the State."  Id.

Plaintiff has not sufficiently alleged that defendants included information about the abuse allegations from the divorce file under the imprimatur of the State.  In some senses, the State

---

[3] In Blum, the Supreme Court discussed how a public defender is employed and appointed by the State to represent an accused.  457 U.S. at 1009.  The Court still held that a public defender acts under the professional canons of ethics rather than under any State-imposed rule.  Id.  This case involves privately retained attorneys who did not perform traditional and exclusive State functions and the State did not employ or appoint them.

created the opportunity for defendants to use certain information—a fact which may be said any time the State creates a public record.  In these circumstances, re-publication by private parties does not constitute a public function "traditionally exclusively reserved to the State."  Id. at 1008; Jackson, 419 U.S. at 352.

In conclusion, plaintiff has not alleged facts which plausibly establish that defendants acted "under the color of law" under any of the three state action tests.  Plaintiff has not pleaded facts to show a "sufficiently close" relationship between defendants and the alleged constitutional violation to consider them state entities for purposes of Section 1983.[4]  Janny, 8 F.4th at 919 (10th Cir. 2021) (quoting Anaya, 195 F.3d at 596).  The Court therefore dismisses plaintiff's Section 1983 claim for failure to state a claim upon which relief can be granted.

It logically follows that plaintiff's claim under Section 1988 is moot.  Section 1988 authorizes the award of attorneys fees to a prevailing party under Sections 1981 or 1983.  As plaintiff has not sufficiently alleged that defendants are state actors, plaintiff cannot "prevail" for purposes of Section 1988.  Barger v. State of Kan., 620 F. Supp. 1432, 1435 (D. Kan. 1985).  The Court therefore dismisses plaintiff's Section 1988 claim for failure to state a claim upon which relief can be granted.

## II.   Remaining Claims

Plaintiff also alleges three state law claims: defamation, abuse of process and invasion of privacy.  Under 28 U.S.C. § 1367(a) and (c)(3), the Court has supplemental jurisdiction over state law claims which are integrally related to a federal claim, but it may refuse to exercise

---

[4]  A sufficiently close relationship between a state entity and a private party usually requires "an active intervention of the courts' discretionary power," or an allegation of "coercive power of government."  Shelley v. Kramer, 334 U.S. 1, 9 (1948).  The complaint does not allege that the state court exercised its discretionary power and encouraged defendants to include the information in their answer and counterpetition.

supplemental jurisdiction if it dismisses the federal law claims. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). The district court should "normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002) (suggesting district court should retain jurisdiction only if parties have expended great deal of time and energy on state law claims).

The Court considers the nature and extent of pretrial proceedings, judicial economy, convenience and whether retaining jurisdiction would serve fairness. Anglemyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir. 1995). In the usual case, the balance of factors points towards declining to exercise jurisdiction over remaining state-law claims. McWilliams v. Jefferson Cnty., 463 F.3d 1113, 1118 (10th Cir. 2006); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court finds no persuasive reason to exercise supplemental jurisdiction to decide the merits of plaintiff's state law claims. See Thatcher Enter. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) (absent compelling reasons to the contrary, notions of comity and federalism demand that state court try its own lawsuits). The pretrial proceedings so far are not extensive, and the Kansas state courts are better positioned to resolve novel state law claims on the unique facts of this case. Allowing the state courts to adjudicate the state law claims will not adversely affect the parties.

In sum, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims based on considerations of judicial economy, convenience, fairness and comity. See

Bauchman for Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997).

### III.     Motion For Sanctions

Under Rule 11 of the Federal Rules of Civil Procedure, Van Osdol seeks sanctions against plaintiff's counsel for filing this action. Van Osdol argues that this action is frivolous because all claims asserted are based upon statements contained within judicial filings and are therefore privileged. Defendant Van Osdol, P.C.'s Motion For Sanctions Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. #17) at 2–3.

Rule 11 provides that by signing his complaint, plaintiff certifies that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b). Federal courts possess inherent authority to sanction both attorneys and litigants for conduct that amounts to abuse of the judicial process. See Roadway Exp. Inc. v. Piper, 447 U.S. 752, 766 (1980). An attorney's actions must be objectively reasonable to avoid Rule 11 sanctions. White v. Gen. Motors Corp., 908 F.2d 675, 680 (10th Cir. 1990). The Tenth Circuit recognizes this as a more stringent standard than a request for sanctions under Rule 37(a)(5)(A) and is a tough standard to satisfy. Predator Int'l, Inc. v. Gamo Outdoor USA, Inc., 793 F.3d 1177, 1182 (10th Cir. 2015).

Though the Court has dismissed plaintiff's federal causes of action, it is not convinced that the statements in question are so clearly privileged that plaintiff's counsel has engaged in "clear, willful, and egregious conduct" which must be deterred by Rule 11 sanctions. Indeed, the Court does not address the question of privilege. Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss. See Blue v. U.S. Dep't

of Army, 914 F.2d 525, 535 (4th Cir. 1990) (imposition of sanctions matter of last resort).  Rule 11 is meant to deter an attorney's significant abuses of the judicial process, not weed out weak legal and factual arguments.  Moreover, because the Court does not address the sufficiency of the state law claims, it has not concluded that they are frivolous, and it expresses no opinion on whether sanctions in connection with these claims should be imposed.

**IT IS THEREFORE ORDERED** that Defendant Van Osdol, P.C.'s Motion To Dismiss For Failure To State A Claim Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. #11) filed May 4, 2021 and Defendant Hendrickson's Motion To Dismiss (Doc. #14) filed May 20, 2021 are **SUSTAINED in part**.  Plaintiff's Section 1983 and 1988 claims are dismissed for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims: defamation, abuse of process and invasion of privacy and these claims are DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that Defendant Van Osdol, P.C.'s Motion For Sanctions Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. #17) filed June 1, 2021 is **OVERRULED**.

Dated this 2nd day of November, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
